**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| NICOLE MATHIAS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| | : | CIVIL ACTION |
| v. | : | No:  06-4849 |
| | : | |
| ALLEGHENY VALLEY | : | |
| SCHOOL, | : | |
| | : | |
| Defendant. | | |

**May 16, 2008**                                                                 **Anita B. Brody, J.**


**MEMORANDUM AND ORDER**

Plaintiff Nicole Mathias ("Mathias") brought this action against Defendant Allegheny

Valley School ("AVS") alleging: (1) sexual harassment under Title VII; (2) gender

discrimination and retaliation under Title VII; (3) intentional infliction of emotional distress; (4)

negligence; and (5) gender discrimination, sexual harassment, and retaliation under the

Pennsylvania Human Relations Act ("PHRA").  Jurisdiction is proper under 28 U.S.C. §§ 1331

and 1367.  Currently before me is AVS's motion for summary judgment on all counts.  Because

Mathias does not raise or discuss her state law negligence claim in her response to AVS's motion

for summary judgment, I consider this claim withdrawn.

1

**I. BACKGROUND**

For purposes of summary judgment, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Here, the facts are stated in the light most favorable to Mathias, and all reasonable inferences are drawn in Mathias' favor. *Anderson*, 477 U.S. at 255.

On July 11, 2005, AVS hired Mathias as a House Manager Aide at its Susquehanna group home ("Susquehanna"). Mathias was hired as a full time employee to work on Saturdays and Sundays from 7:00 a.m. to 11:00 p.m.[1] Mathias had the same working hours as Lawanda McGlone ("McGlone"), another House Manager Aide at Susquehanna. The direct supervisor of Mathias and McGlone was Flora Figueroa ("Figueroa"), the House Manager at Susquehanna. As House Manager, Figueroa resided at Susquehanna. Although Figueroa was off duty on Saturdays and Sundays, she spent most of her time during weekends at Susquehanna.

In September, 2005, Figueroa began acting inappropriately toward Mathias. The following is a list of the offensive incidents involving Figueroa that Mathias could recall:

- Figueora told Mathias that Mathias' "cooking was so good that she already had money, all that she needed was a strap on to take me away from my husband." (Mathias Dep., p. 104, lines 14-17).

---

[1] For the first two weeks of her employment, Mathias attended orientation. During this orientation, Mathias attended a session reviewing the contents of the Employee Manual. At this session, Mathias received a copy of AVS's Employee Manual to take home and review for one night; however she was not allowed to keep the manual and was not told how she could obtain a copy of it in the future. The Employee Manual contained both non-discrimination and non-harassment policies. On July 22, 2005, Mathias signed a statement confirming that she had read the manual and that she agreed to comply with its policies and procedures.

- Figueroa told Mathias that her "husband . . . wasn't . . . fucking her right.  And that she was ready to try women." (Mathias Dep., p. 98, lines 21-24).

- Figueroa told Mathias that "she could only climax so to speak through oral sex." (Mathias Dep., p. 99, lines 21-23).

- Figueroa referred to Mathias and McGlone as "broke bitches" and said that "if she had our ass and our titties that she would not be working for Allegheny Valley School."  (Mathias Dep., p. 110, lines 19-23).

- Figueroa asked Mathias and McGlone, "what are you guys, lesbians or something?"  (Mathias Dep., p. 115, lines 15-17).

- Figueroa "slightly brushed up against" Mathias' chest when she was reaching to get something in a cabinet.   (Mathias Dep., p. 122, lines 8-15).

Although Mathias told Figueroa, on one occasion, that a comment she made was offensive, generally Mathias ignored these incidents and continued with her work.  After each of these incidents, Mathias was able to complete her shift and perform her job duties.   Mathias found Figueroa's comments demeaning and offensive and they left her feeling discouraged.  As a result of Figueroa's actions, Mathias became angry and she developed headaches and anxiety over coming to work.  However, Mathias never reported the comments made by Figueora to any of her supervisors.

On the weekend of December 10, 2005, Mathias failed to report to work on either Saturday or Sunday.  Mathias felt unable to continue working at Susquehanna because of Figueroa's comments.  Mathias was aware of AVS's policy that required her to call in advance to report her absence; however, she felt unable to call because she could not handle speaking to

Figueroa.  AVS had the following attendance policy in its Employee Manual:

      I.      Reporting Off Duty Procedure

      Employees must report off each and every time (day) they will not be coming to work as scheduled, at least one hour prior to their scheduled shift. . . .

      II.     AWOL

      If an employee does not report off work . . . that employee will be considered AWOL (Away Without Official Leave).  Being AWOL will result in disciplinary action, up to and including termination. . . .

      In the first instance of an employee being AWOL, said employee must present an excuse acceptable to Allegheny Valley School for being away without official leave.  Failure to present an excuse which is acceptable to Allegheny Valley School will result in termination. . . .

      For the second instance of AWOL, employee will be immediately terminated, regardless of the excuse.

      On December 13, 2005, AVS's Human Resources Manager, Helene Bertino ("Bertino"),

sent the following letter to Mathias:

      You did not report to work as scheduled, nor report off work correctly since December 10, 11, 2005 per Allegheny Valley School policy (see attached).  This is considered AWOL ["Absent Without Official Leave"].

      If you do not present an excuse acceptable to Allegheny Valley School for your AWOL you will be immediately terminated.  In the event you do present an excuse acceptable to Allegheny Valley School, please be advised that your second instance of AWOL will result in immediate termination regardless of the excuse therefore.

      If you do not contact Richard Snyder, by December 17, 2005, you will be considered to have abandoned your position.

After Mathias received this letter, on approximately December 14, 2005, Mathias' husband,

George Mathias ("G.M.") contacted Administrator, Richard Snyder ("Snyder").  Mathias did not

ask her husband to call Snyder and when Snyder asked to speak to Mathias directly, she declined

to speak with Snyder.  In this conversation, G.M. reported to Snyder that Figueroa had called Mathias a lesbian and that Figueroa's husband had called Mathias Aunt Jemima.  G.M. asked Snyder, "is this the type of business that they run where employees taunt their other employees?" (G.M. Dep., p.22, lines 3-5).

Mathias never contacted Richard Snyder or anyone else at AVS to discuss the letter that she received from the Human Resources Manager, Bertino.  Additionally, Mathias never personally reported any sexual harassment to AVS during her employment or after her termination.  On December 20, 2005, AVS mailed a Change of Status form to Mathias, which indicated that AVS had terminated Mathias' employment on December 19, 2005 because she had been AWOL.

## II.  LEGAL STANDARD

Summary judgment should be granted under Federal Rule of Civil Procedure 56(c) "if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir. 1997).  A factual dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  In order to survive summary judgment, a plaintiff must make a showing "sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The court must draw all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  DISCUSSION

Mathias' complaint contains allegations of sexual harassment and retaliation under both Title VII and the PHRA.  Because Title VII and the PHRA have identical legal standards, I combine the discussion of Mathias' claims under Title VII and the PHRA.[2]

### A.  Sexual Harassment in Violation of Title VII and the PHRA

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  "A plaintiff who claims that she has been sexually harassed has a cause of action under Title VII if the sexual harassment was either a *quid pro quo* arrangement, or if the harassing was so pervasive that it had the effect of creating an intimidating, hostile, or offensive work environment.  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990).   In this case, Mathias asserts a hostile work environment claim.

To establish a hostile work environment claim, a plaintiff must demonstrate that: "(1) the employee[] suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability."  *Id.*

After reviewing the evidence, I find that genuine issues of material fact exist as to the

---

[2] According to the Third Circuit, "[t]he proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably."  *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001).

elements necessary to prove the existence of a hostile work environment claim.  Therefore, I deny AVS's motion for summary judgment on this claim.

### B.  Retaliation in Violation of Title VII and the PHRA

Title VII makes it unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  In deciding a discriminatory retaliation claim, this Court must use the burden shifting test set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).

The *McDonnell Douglas* framework proceeds in three stages.  First, the plaintiff must establish a prima facie case for unlawful discrimination.  *McDonnell Douglas*, 441 U.S. at 802.  To establish a prima facies case of discriminatory retaliation, the plaintiff must demonstrate that:  "(1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action."  *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001).  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action.  *See  McDonnell Douglas*, 411 U.S. at 802.  If the employer succeeds in articulating a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to demonstrate that this reason is in fact pretext.  *Id*. at 804.

Mathias alleges that AVS terminated her employment in retaliation for the report her

husband made to Snyder regarding Figueora's inappropriate conduct toward Mathias.[3]

Assuming *arguendo* that Mathias has established a prima facie case,[4] the burden then shifts to

AVS to articulate a legitimate, nondiscriminatory reason for Mathias' discharge.  As explained

by the Third Circuit, "[t]his is a "relatively light burden" that "the employer satisfies . . . by

introducing evidence, which taken as true, would permit the conclusion that there was a

nondiscriminatory reason for the unfavorable employment decision. The employer need not

prove that the tendered reason *actually* motivated its behavior. . . ."  *Fuentes v. Perskie*, 32 F.3d

759, 763 (3d Cir. 1994) (emphasis in original).

AVS asserts that it discharged Mathias because she failed to show up for work on the

weekend of December 10, 2005 and did not call in advance to notify her supervisor that she

would be absent.   Mathias was aware of the policy in the Employee Manual that required her to

report any upcoming absence prior to her shift.  In addition, AVS's Employee Manual had a

policy that if an employee did not report to work or notify a supervisor in advance of the absence,

the employee would be considered Absent Without Official Leave ("AWOL") and face possible

termination.

---

[3] Mathias also alleges that during her employment at AVS, Figueroa changed her job duties and gave her more difficult tasks. Mathias contends that this change in job duties is proof of retaliation by AVS.  However, this retaliation claim fails as a matter of law because Mathias never engaged in any protected activity before the alleged changes in her job duties were made.

[4] It is unlikely that Mathias can establish a prima facie case of retaliation because she never reported any alleged harassment to anyone at AVS either before or after her discharge; hence she did not engage in a protected activity.  Mathias contends that she has established a prima facie case of retaliation because her husband engaged in the protected activity that caused AVS's retaliation against her when he called Snyder to report Figueroa's behavior.  However, according to the Third Circuit, Title VII prohibits third-party retaliation claims and requires that "the individual who was discriminated against must also be the individual who engaged in protected activity."  *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 568 (3d Cir. 2002).

On December 13, 2005, AVS sent a letter to Mathias restating its AWOL policy and notifying her that she would be discharged if she did not contact Richard Snyder by December 17, 2005 with an acceptable excuse for her absence.  On December 19, 2005, after Mathias failed to contact Richard Snyder, AVS discharged Mathias.  Based on this evidence, I find that AVS had a legitimate, nondiscriminatory reason for Mathias' termination.

Because I find that AVS has successfully set forth a legitimate, nondiscriminatory reason for Mathias' discharge, the burden shifts to Mathias to establish that AVS's explanation for her termination is pretextual.  The standard for proving pretext "places a difficult burden on the plaintiff." *Fuentes*, 32 F.3d at 765.   This is because "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id*. (internal quotation and citation omitted; emphasis in original).  According to the Third Circuit, to defeat summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id*. at 764.

Mathias provides no evidence to discredit AVS's proffered reason for discharge, nor does she provide any invidious discriminatory reason for her discharge.  In fact, Mathias concedes that: (1) she was aware of AVS's written policy that required her to report an absence prior to the start of the shift that she planned to miss; (2) she never contacted anyone at AVS before missing

work on the weekend of December 10, 2005; (3) she received a letter from AVS warning her that she would be terminated unless she provided an acceptable excuse for her absences by December 17, 2005; and (4) she never contacted AVS after receiving the letter.

The evidence demonstrates that AVS's AWOL policy appeared in its Employee Manual and specifically stated that an employee's first instance of being AWOL would result in her termination if she failed to provide an acceptable excuse for the absence. Additionally, deposition testimony reveals that AVS routinely issues 35-40 AWOL letters a year and strictly enforces its AWOL policy. Mathias provides no evidence to dispute these facts.

Even if Mathias could establish a prima facie case for discriminatory retaliation, I find that Mathias is unable to show that AVS's legitimate, nondiscriminatory reason for her discharge is pretextual. Therefore, I grant AVS's motion for summary judgment on this claim.

## C.  Intentional Infliction of Emotional Distress ("IIED")[5]

For a plaintiff to prevail on a claim of IIED, the conduct must (1) be intentional or reckless; (2) be extreme and outrageous; and (3) cause severe emotional distress. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987). According to the Third Circuit, "[t]he gravamen of the tort of intentional infliction of emotional distress is that the conduct complained of must be of an extreme or outrageous type." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (internal quotations omitted). Additionally, "[i]t has been said that 'the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

---

[5] Because IIED is a state tort, I analyze this claim according to Pennsylvania state law. Although it is unsettled whether the tort of IIED exists in Pennsylvania, for the purposes of this motion, I will assume that it does. *See Taylor v. Albert Einstein Medical Center*, 754 A.2d 650 (Pa. 2000).

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)). According to the Supreme Court of Pennsylvania, "courts have been chary to allow recovery for intentional infliction of emotional distress. . . . Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998). "Described another way, it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.* at 754 (internal quotations omitted).

As observed by the Third Circuit, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* Further, "as a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress . . . . The extra factor that is generally required is retaliation for turning down sexual propositions" *Andrews*, 895 F.2d at 1487.

Mathias alleges that Figueroa made five offensive comments to her and once slightly brushed up against her chest, which may have been done unintentionally. While Figueroa's alleged actions are inappropriate, they clearly are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox*, 861 F.2d at 395. My finding that this conduct is not extreme or outrageous comports with the Third Circuit's observation that IIED is extremely

11

rare in the employment context.  Although an employer's conduct may rise to level of outrageousness necessary for an IIED claim in a sexual harassment case in which an employer retaliates against an employee who turns down a sexual proposition, Figueroa never propositioned Mathias and, as discussed above, the retaliation claim is untenable.   Because the conduct at issue was neither extreme nor outrageous so as to go beyond all possible bounds of decency, Mathias' IIED claim fails as a matter of law.  Therefore, I grant AVS's motion for summary judgment on this claim.

**ORDER**

_____**AND NOW**, this __16th__ day of May, 2008, it is **ORDERED** that AVS's Motion of

Defendant for Summary Judgment (Doc. #23) is:

- **DENIED** as to the claim of a hostile work environment under Title VII and the

  PHRA;

- **GRANTED** as to the claim of retaliation under Title VII and the PHRA; and

- **GRANTED** as to the claim of intentional infliction of emotional distress.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to: